Johnston vs. Johnston.

No. 7882.

ELIZA JOHNSTON vs. STEWART JOHNSTON.

When a Judgment of Separation *à mensâ et thoro* has been granted to one of the spouses, the other spouse is not, because a year has elapsed and no reconciliation taken place, entitled to a Judgment of Divorce.

Such legal right belongs exclusively to the party in whose favor the Judgment of Separation is rendered.

APPEAL from the Fourth District Court, parish of Orleans. *Houston,* J.

Jas. C. Walker, Curator *ad hoc,* for Appellee.

J. O. Nixon, Jr., for Stewart Johnston, Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The question raised in the case *now* before this Court, under *cover* of the above title, is novel, interesting and important.

The plaintiff, having obtained a separation *à mensâ et thoro* from the defendant, and more than a year having since elapsed, and no reconciliation taking place, the husband, *averring those facts,* has instituted in the original proceedings a suit in which he became a plaintiff, and asked for a judgment of *divorce* from his wife, the original plaintiff, dissolving the bonds of matrimony existing between them.

A curator *ad hoc* having been appointed to the absent wife, answered, pleading a general denial.

After hearing evidence and parties, the lower court dismissed the petition, as in case of *nonsuit.*

Stewart Johnston, the original defendant, appeals from the judgment so rendered.

The issue presented simply is : Can the spouse against whom a judgment of separation from bed and board has been obtained claim a *divorce,* after the expiration of a year from the date of the separation, on showing that there has been *no* reconciliation ?

It is not within our province, and we will not undertake to pass upon the propriety of the motives which have inspired the lawgiver in viewing marriage as a *civil contract only,* and in providing that it shall be dissolved by death or divorce.   The regulation of the *civil* character of such a contract, and of the rights of the parties thereunder, appertained, and still belongs, to another co-ordinate branch of the government, with whose action, when not violative of the organic law, the judiciary has no authority to interfere.

In cases of that description, as well as in all other cases of covenant, when a breach is alleged and established, the functions of the judiciary are confined to an inquiry into the fact of violation of the

agreement, and when it is ascertained that the pact has been trampled under foot, it is the duty of the courts so to declare it, leaving the parties to stand the legal and *other* consequences flowing from such denunciation.

The law considers marriage as a *civil contract only*, and provides that it shall last until death, *unless* dissolved by divorce. Cases in which the nullity of marriages is pronounced are not cases of dissolution. Cases in which, on account of prolonged absence of an unheard-of spouse, the bonds of matrimony are loosened, are, in a certain aspect, cases of dissolution. R. C. C., 86, 136, 80.

It is only in those cases in which the defendant has been sentenced to an infamous punishment, or convicted of adultery, that " a judgment of *divorce* can be rendered in the same decree which pronounces the separation from bed and board." R. C. C., 139.

In all other cases, the law requires that "no divorce shall be granted unless a judgment of separation from bed and board be *first* rendered between the parties; and one year shall have expired from the date of the judgment of separation from bed and board, and no reconciliation have taken place." R. C. C., 139.

The Constitution proclaims, and very justly, that "all courts shall be open, and every person, for injury done him in his rights, lands, goods, person or reputation, shall have adequate remedy by due process of law and justice administered, without denial or unnecessary delay." Art. 11.

Previous to the announcement of this invaluable privilege, which existed without any such recognition and declaration, persons have always enjoyed the rights mentioned. The code of laws in force in this State for more than half a century, has provided for the mode in which such rights can be asserted and enforced. It declares that an action is the right given to every person to claim, judicially what is due, or belongs to him. C. P., 1.

It is elementary that no demand can be asserted and entertained judicially unless founded upon a *valid* cause of complaint—that is, one not reprobated by law.

The maxim : "*Allegans suam turpitudinem, nullus audiendus,*" is of the greatest antiquity, and has always received universal application, as based upon considerations essentially necessary for the preservation of public order and good morals. It is on that principle that, whenever the cause of action set forth is, in itself, *immoral* and *illegal*, courts of justice, upon mere mention, will turn deaf to the demand and reject it without mercy.

No one is permitted to enter the temple of Justice with a prayer for relief, unless with clean hands, and with the assertion of the violation of

a legal right.  An injury must have been done, and the law must have provided for its reparation.

Applying that principle to the case before us, the inquiry arises : What is the legal right which the petitioner claims, which was violated ? In other words : What is the injury which he has sustained, and what is his relief?

The petitioner alleges, substantially, that his wife has obtained against him a separation from bed and board ; that more than a year has elapsed since its rendition ; that no reconciliation has taken place between them.  *Wherefore* he prays for a *divorce.*

From these allegations, it is irresistibly inferred that the petitioner charges that, upon a proper *complaint* of infringement against him and *proof* in support, a competent court has found *against* him some wrongful act, and on that account has put an end to the conjugal cohabitation and the common concerns which existed between his wife and him. R. C. C., 136.  That since then time has elapsed, and no reconciliation has taken place ; that the judgment has been acquiesced in, and that by their inaction, their continued separation and persistent exclusion, the one of the other, they have admitted the impossibility, up to then, of their living together as husband and wife.

The record does not show that the original plaintiff has primarily asked for a separation, and ultimately for a divorce, nor does it show for what cause the first judgment was sought and obtained.  Had she included the prayer for the divorce, it would have indicated, on her part, some intention of applying for a *divorce* in the course of time ; but she has not done so.  It must, therefore, be deduced that such was *not* her intention.  Such abstention would not, however, debar *her* from subsequently seeking that remedy.

It is manifest that, from the averments of his petition, the new plaintiff cannot pretend that he has asserted any injury done him by the wife, from whom he asks to be divorced.  He does not aver that she has been sentenced to an infamous punishment, or that she has committed the shameful and disreputable act which brands forever the character of a married woman.  He alleges no ill-deed committed by her.  On the contrary, he prefers his own wrongs and his impenitence. She is the one who had a cause of complaint against him.  She is the one who has the right of asking relief, which was a *separation first,* and a *divorce next,* if she chose.  She is the one who was slighted, who was aggrieved, who was injured, and to whom the courts are open for the redress of the injury done her.  She has been forced by him to complain and to ask relief, and she has obtained it.  Since, therefore, she has done her husband no injury, since she has become guilty of no offense which could justify a divorce, at the instance of her husband, he can claim, and the

Court can allow him, none.  Her husband has continued to offend her. He has not offered to amend and be reconciled ; or, if he has, she has not thought it safe to condone.  He is the guilty party, and for his guilt towards the wife, whom he had chosen as a companion for life, the law inflicts a punishment upon him by forbidding him from marrying again ; for it is not until after a divorce has been pronounced that he is permitted to do so.  As long as the wife has not asked and obtained that final sentence, the door for repentance is open to him, and if his atonement is accepted, the separation becomes as though it never was pronounced. For the lamentable situation in which he may find himself, that of a wifeless husband, he has no one to blame but himself, *volenti non fit injuria*.  For relief from the condition in which he is placed, he must look to his wife, and to her alone, for in her power it lies exclusively to release him civilly altogether, or to welcome him back to her affection and devotion.  By withholding from him the faculty of procuring a dissolution of the bonds of matrimony, the law has done an act of justice to the wife, and has upheld the inviolability of conjugal engagements, for it forces him to repentance and to atonement.  Had the law not done so, had it placed it in the power of the defendant in the separation judgment to ask and obtain a divorce after one year, no reconciliation taking place, it would have virtually provided for an easy violation and dissolution of the matrimonial pact, by conferring upon the transgressor the right of obtaining, at his whim and caprice, *indirectly*, that which he could not have procured *directly*.  By that wise measure it protects the unsullied character of the spouse, who procured the separation, from the odious reflection which the decree of divorce, unexplained as it would be on its face, would otherwise cast upon it.  Her conduct, her feelings, her name, her reputation, are thus effectually shielded against both aspersion and attending humiliation.  It is worthy of note, that the article under consideration is not to be found either in the Code of 1808, or in that of 1825.  It is an innovation to the laws relative to the dissolution of marriage by divorce, and was inserted by special statutory disposition.

When subjected to judicial examination and dissection, it is found to mean and to say that divorces may be granted instantly in cases of infamous punishment and adultery, but not in any other case, in which they shall not be allowed, unless a separation *à mensâ et thoro* has been previously decreed, unless a year has thereafter elapsed and no reconciliation has taken place.  In no case does the law provide that either the judgment of separation or that of divorce shall be granted on application of the guilty party.  It affords relief to none but the meritorious one, that is, the one whose rights have been violated, and who has sustained an injury, who claims protection, and for whom relief has been provided.

We have looked back to the French law, as it once existed, on the subject of divorce. We have done so with justification, as our system mainly derives from it. We thought we would find among its provisions precedents by which to be enlightened. Our search has not proved unsuccessful. We have found in the Napoleon Code, art. 260, which was once in force, but which was repealed years ago, as were also all laws on the subject of *divorce*, so effectually, that the only relief now accorded in France is merely separation from bed and board. That article reads:

"Après une année d'épreuve, si les parties ne se sont pas réunis, *l'époux demandeur* pourra faire citer l'autre époux à comparaître au tribunal, dans les délais de la loi, pour y entendre prononçer le jugement définitif qui, pour lors, admettra le *divorce*."

A reference to the Code of 1808 does not show that marriage could then be dissolved by divorce. We presume, however, that such was the law at the time, from a note on the subject in the "Travaux préparatoires" of the Code of 1825. Amend. art. 30, p. 10.

Article 260 C. N. was not incorporated in the Code of 1808, no doubt because it was deemed that, in the cases in which the law merely authorized a separation *mensâ et thoro*, no divorce should be granted *at all*. Neither was it embodied in the Code of 1825. The reason which induced the compilers of the first Code probably inspired those of the second Code. The Legislature that subsequently adopted the statute, which now forms the article under consideration, to all appearances did so on the theory which dictated article 260 C. N., and which can well be said to have been, that a denial of the right of asking for a divorce to the successful plaintiff in the separation suit would be adding injury to injury by inflicting further hardship upon one well deserving of pity, protection and assistance.

Fenet Discours et Motifs, vol. 9, 436, 438, 484, 485.

While presenting this article, to the Corps Législatif, Mr. Treilhard, referring to a hasty decision on the part of the Court granting the separation, and to the propriety of allowing time for reflection, said : " Telle a été la crainte d'une décision trop légèrement prononcée, que, le tribunal est autorisé à ne pas admettre immédiatement le divorce, quoique la demande soit bien établie et qu'il peut soumettre les époux à une année d'épreuves pour s'assurer encore plus de la persévérante volonté de *l'époux demandeur*, et qu'il ne peut y avoir de sa part aucune espérance de retour," p. 485.

It may well occur, that in the absence of reconciliation, in the legal impossibility of contracting a new *civil* alliance, the petitioner may be misled by and yield to those temptations which a fallen nature may prompt and which mortal flesh has inherited, and that deplorable disorder may ensue from his weaknesses, but with such considerations

and consequences, however lamentable they may prove, courts have nothing to do. The responsibility attaching the commission of such reprehensible acts rests neither upon the consciences of judges nor upon those of law-makers, but weighs solely upon the heads of the violators of the most solemn of human pacts.

To recognize in the petitioner the right of demanding and obtaining the relief which he seeks, would be to incorporate in the law a spirit and a letter which have been intentionally excluded from it as reprobated. It would be to judicially legislate—a thing which we are prohibited from doing, and which we have no disposition therefore to do.

We have given this question our full consideration, and deem that we have correctly expounded the law. A different conclusion would have proved offensive to our moral sense and subverted our well-settled appreciations of the great fundamental principles according to which questions of right or wrong are to be tested and determined, and which underlie the usages and customs consecrated by tens of centuries among men for the well being and greater good of society.

The lower court viewed the matter somewhat in the same light, but *nonsuited* the petitioner. The judgment should have been one absolutely destructive of his demand, under the averments.

It is, therefore, ordered that the judgment of the lower court be reversed; and proceeding to render such judgment as it should have rendered,

It is ordered, adjudged, and decreed that the petition of Stewart Johnston for a *divorce* from Eliza Johnston be rejected, with costs in both courts.